## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Raymond Shaw,

                Plaintiff,        Case No. 13-cv-11461

                                     Hon. Judith E. Levy

v.                                Mag. Judge Mona K. Majzoub

AT&T Umbrella Benefit Plan No. 1,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ORDER AWARDING BENEFITS, INTEREST, COSTS, AND ATTORNEY FEES [28]

On July 29, 2015, the Sixth Circuit entered judgment in the appeal of this case, finding the defendant AT&T Umbrella Benefit Plan No. 1 acted arbitrarily and capriciously when it denied plaintiff Raymond Shaw long-term disability ("LTD") benefits under an ERISA-regulated plan. *See Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 552 (6th Cir. 2015). The Sixth Circuit remanded for entry of an order awarding plaintiff the benefits to which he is entitled, *see id.*, and the mandate issued on August 27, 2015. (*See* Dkt. 29.) At issue is

plaintiff's motion for benefits, interest, costs, and attorney fees. (*See* Dkt. 28.)  For the reasons set forth on the record and below, plaintiff's motion is granted in part.

## I.   Background

The facts as provided by the Sixth Circuit can be summarized as follows.  Plaintiff was employed as a customer-service representative until he stopped working because of chronic neck pain. *Shaw*, 795 F.3d at 541.  As a participant of the AT&T Midwest Disability Benefits Program, a component of defendant AT&T Umbrella Benefit Plan No. 1, he was eligible for fifty-two weeks of short-term disability benefits, which the plan administrator approved, and LTD benefits thereafter. *Id.* at 541-43.  Plaintiff applied for LTD benefits, the plan administrator denied his application, and plaintiff appealed.  *Id.* at 543-46.  The administrator upheld the denial.  *Id.* at 546.

On March 31, 2013, plaintiff filed a complaint with this Court, alleging that the plan administrator wrongly denied his application for LTD benefits.  *See id.*  The parties filed cross-motions for judgment on the administrative record, and on September 8, 2013, the Court granted defendant's motion and entered judgment dismissing plaintiff's case

with prejudice. *See id.* Plaintiff appealed, and the Sixth Circuit reversed this Court's judgment and remanded.

The Sixth Circuit found that the plan administrator ignored favorable evidence submitted by plaintiff's treating physicians, selectively reviewed the evidence from the treating physicians that it did consider, failed to conduct its own physical examination, and heavily relied on the opinions of non-treating physicians. *See id.* at 547-51. The Sixth Circuit thus found that the plan administrator acted arbitrarily and capriciously in denying plaintiff's application for LTD benefits. *See id.* at 551. Because remand to the plan administrator "would [have been] a useless formality," given the "substantial and objective medical evidence demonstrating that [plaintiff] is disabled," the Sixth Circuit remanded to this Court for entry of an order awarding plaintiff his benefits. *See id.* at 551-52.

Plaintiff filed a motion on August 26, 2015, seeking LTD benefits, pre-judgment interest, costs (the original filing fee and the appeal filing fee), and statutory attorney fees. (*See* Dkt. 28; *see also* Dkt. 31; Dkt. 32; Dkt. 34.) The Court held a hearing on November 4, 2015, and requested that the parties notify the Court as to what rate the parties could agree,

if at all, to calculate pre-judgment interest.  The parties contacted the Court on November 24, 2015, and asked the Court to award plaintiff 6% pre-judgment interest on his benefit award of $35,412.72.

## II.   Analysis

Because the parties agree on an award of 6% pre-judgment interest on past-due benefits totaling $35,412.72, those figures are adopted for both the rate of pre-judgment interest and the award of LTD benefits.  The only remaining issues are whether to award plaintiff the costs of his original and appeal filing fees and whether and at what amount to award him attorney fees.

### a. Costs

The only costs that plaintiff seeks are $350 for his original filing fee and $505 for his appeal filing fee, a total of $855.  (*See* Dkt. 28 at 7.) Defendant responded that the Sixth Circuit's mandate precludes an award of costs, because the mandate "expressly denies costs to either party."  (*See* Dkt. 31 at 12-13.)  At oral argument, defendant clarified that it was relying on the part of the mandate that provides "COSTS: None."  (*See* Dkt. 29 at 2.)  But the reference to costs in the mandate only indicates that plaintiff did not seek costs at the Sixth Circuit, not

that this Court is precluded from awarding costs.  Plaintiff need not have filed "a duplicative claim in the Court of Appeals because costs are recoverable under ERISA in this Court." (*See* Dkt. 34 at 5.)  Plaintiff is entitled to $855 in costs.

Under 29 U.S.C. § 1132(g)(1), the Court has "broad discretion to award costs to parties in ERISA actions who have shown some degree of success on the merits." *See Potter v. Blue Cross Blue Shield of Mich.*, 10 F. Supp. 3d 737, 770 (E.D. Mich. 2014).  And under Rule 54(d)(1), "unless a federal statute, these rules, or a court order provides otherwise, costs . . . *should* be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1) (emphasis added).  Such costs may include filing fees. *See, e.g.*, *Moore v. Menasha Corp.*, No. 08-cv-1167, 2013 U.S. Dist. LEXIS 10126, at *16-17 (W.D. Mich. Jan. 25, 2013) ("Plaintiffs also seek the $350 district court filing fee as part of their costs. . . .  [T]his filing fee will [] be awarded."); *Vick v. Metro. Life Ins. Co.*, No. 03-cv-73124, 2006 U.S. Dist. LEXIS 41708, at *19-20 (E.D. Mich. June 22, 2006) ("Plaintiff lists an amount of $215.00 for legal costs including $150.00 for 'filing the Summons and Complaint in State Court.' . . .  [T]hese

costs requested by Plaintiff are reasonable legal costs associated with this litigation and should be properly awarded.").

The Court finds that plaintiff's request is not only reasonable but also modest. Plaintiff does not seek any number of costs that have been awarded in other ERISA cases. *See, e.g.*, *Northeast Ohio Coalition v. Husted*, Nos. 06-cv-00896, 12-cv-00562, 2014 U.S. Dist. LEXIS 137320, at *52-54 (S.D. Ohio Sept. 29, 2014) (awarding costs of "photocopying and printing; online legal research; telephone, fax, and conference services; shipping, postage, and courier service; court filing and transcript fees; overtime expenses and related meals and transportation; travel, including airfare, mileage, taxi fare, meals, and lodging; and expert fees"); *Potter*, 10 F. Supp. 3d at 772-73 (awarding telephone, postage, facsimile, and travel costs; copying costs; and computerized research costs). Plaintiff was successful on the merits, and the filing fees are appropriate costs here. Plaintiff's request for $855 in costs is granted.

### b. Attorney Fees

Plaintiff requests $425-per-hour for 220.2 hours of work performed by attorney Robert June, totaling $93,585, and $250-per-

hour for 34.5 hours of work performed by co-counsel Nicole Winston, totaling $8625.  (*See* Dkt. 34 at 56; Dkt. 34-5 at 2-8.)  Defendant argues that the mandate precludes an award of attorney fees, the Court should use its discretion to deny attorney fees because "this was a close case," and, at minimum, the fee should be reduced because it is grossly excessive.   (*See* Dkt. 31 at 13-23.)   Because the mandate does not preclude an award of fees and the *King* factors weigh in plaintiff's favor, plaintiff's request for attorney fees is granted in part.

The Sixth Circuit's mandate does not preclude an award of attorney fees.   Defendant argues that because "[n]either the Sixth Circuits July 29, 2015 opinion nor its August 27, 2015 mandate addresses the issue of attorney's fees . . . . [p]laintiff's request for [such] fees must be denied."   (*See* Dkt. 31 at 14.)   Defendant is incorrect. Under the "mandate rule," this Court "may consider those issues not decided expressly or impliedly by the appellate court or a previous trial court."   *See Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992); *see also Moon v. UNUM Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006) ("[T]he better course is to leave the question of attorney fees to the district court in the first place.").   Because, as defendant notes, neither

7

the Sixth Circuit opinion nor mandate "addresses the issue of attorney's fees," (see Dkt. 31 at 14), this Court is free to do so.

Under 29 U.S.C. § 1132(g)(1), the Court has discretion to award reasonable attorney fees to a party that has achieved "some degree of success on the merits." *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010) (claimant need not even be a "prevailing party" to be eligible for attorney fees under ERISA; claimant need only show he obtained "some degree of success on the merits"). Plaintiff prevailed on the merits, so the question of success is not at issue here. The next step is to consider the five factors established by the Sixth Circuit in *Secretary of Dep't of Labor v. King*:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting the fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

775 F.2d 666, 669 (6th Cir. 1985). "No single factor is determinative." *Moon*, 461 F.3d at 642-43.

The second and fourth *King* factors are not at issue. Defendant does not dispute that the second factor—the opposing party's ability to

8

satisfy an award of attorney fees—weighs in plaintiff's favor. (*See* Dkt. 31 at 16.)  And plaintiff concedes that the fourth factor—whether the party requesting the fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA—does not weigh in his favor. (*See* Dkt. 28 at 13.)  Thus only the first, third, and fifth factors are analyzed.

The first *King* factor—the degree of the opposing party's culpability or bad faith—weighs in plaintiff's favor.  Although "an arbitrary and capricious denial of benefits does not necessarily indicated culpability or bad faith," see *Heffernan v. UNUM Life Ins. Co. of Am.*, 101 F. App'x 99, 109 (6th Cir. 2004), this "by no means *precludes* a finding of culpability or bad faith based only on the evidence that supported a[n] arbitrary-and-capricious determination."  *See Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 530 (6th Cir. 2008) (emphasis in original).  Here, as in *Heffernan*, there is "substantial and objective medical evidence demonstrating that [plaintiff] is disabled," and the plan administrator "ignored favorable evidence from [plaintiff]'s treating physicians."  *See Shaw*, 795 F.3d at 548-49, 552; *Heffernan*, 101

F. App'x at 109 (finding defendant culpable because it "ignored overwhelming evidence of [plaintiff]'s disability" and relied on "isolated snippets from the record").   Thus defendant was at least "culpable" under the first factor.  *See Blajei v. Sedgwick Claims Mgmt. Servs.*, No. 09-13232, 2010 U.S. Dist. LEXIS 102793, at *15-16 (E.D. Mich. Sept. 28, 2010) ("[I]f a plan administrator's conduct is culpable, *i.e.*, blameworthy, this factor favors an award of fees.").

The third *King* factor—the deterrent effect of an award on other persons under similar circumstances—also weighs in plaintiff's favor. Defendant disputes this, arguing that "this case was very fact-specific, and the Sixth Circuit's criticisms were specific to the individual medical specialists who reviewed [p]laintiff's medical records (and whether they conducted a so-called 'selective review')."  (*See* Dkt. 31 at 17.)  This is unpersuasive, in part because this factor would rarely, if ever, weigh in favor of plaintiffs under such a standard.   ERISA benefits determinations are often fact specific.  And even if the "Sixth Circuit's criticisms were specific to the individual medical specialists," (see *id.*), the "key question . . . [is] whether the fee award would have a deterrent effect on other plan administrators." *See Gaeth*, 538 F.3d at 532.  The

facts here "are not so unique that they fail to serve any deterrence value to other [plan administrators] under similar circumstances." *See Moon*, 461 F.3d at 645.  An award of attorney fees would discourage other plan administrators from accepting "a so-called 'selective review'" from medical specialists.

Finally, the fifth *King* factor—the relative merits of the parties' positions—weighs in plaintiff's favor.  Defendant argues that this was a close case, because "the judges who considered this case split 2 and 2" if one considers the opinions of "this Court, the appellate majority, and the appellate dissent."  (*See* Dkt. 31 at 17-18.)  That is a flawed characterization, because it weighs this Court's overturned opinion on equal footing with those of the judges who sat on the Sixth Circuit panel.  It would be an abuse of discretion to agree.  *See Moon*, 461 F.3d at 644 ("In reaching its 'two out of four judges' conclusion, the district court relied upon its own overturned decision in the underlying action . . . .  This reasoning is an abuse of discretion.  This was not a close case.").

Plaintiff overcame the arbitrary and capricious standard of review, which is highly deferential to administrators.  *See, e.g.*, *Blajei*,

2010 U.S. Dist. LEXIS 102793, at *8 ("[A] number of district courts in the Sixth Circuit have found that where a plaintiff overcomes an arbitrary and capricious standard of review, . . . the plaintiff's position had more merit.") (collecting cases); *see also Thies v. Life Ins. Co. of N. Am.*, 839 F. Supp. 2d 886, 894 (W.D. Ky. 2012) ("Based on the decision to remand the case [to the plan administrator], the Court finds that the Plaintiffs' case is the one having more relative merit."). Here, the Sixth Circuit has already determined the merit of plaintiff's argument. Rather than remand to the plan administrator for reconsideration, the Sixth Circuit determined that plaintiff was entitled to LTD benefits.

Defendant urges this Court to consider that "the Sixth Circuit majority made a significant error in viewing" some of the medical evidence. (*See* Dkt. 31 at 17-18.) That is not correct, and even if it were, this Court would not do so. As plaintiff highlights, the Sixth Circuit *majority* found that defendant "did not engage in a 'deliberate, principled reasoning process,'" and that the medical evidence was sufficiently "substantial and objective" that remand to the plan administrator would have been "a useless formality." (*See id.* at 17-18.) When reviewed through the proper lens, this was not a close case.

12

Four of the five *King* factors weigh in plaintiff's favor. Plaintiff is thus entitled to an award of attorney fees. Next, the Court must determine the amount of a reasonable award.

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). The "lodestar" method—multiplying a reasonable hourly rate by the proven number of hours reasonably expended on the case by counsel—is the "proper method for determining the amount of reasonable attorney's fees." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (citing *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563 (1986)). First, the lodestar must be calculated for each attorney involved. *See Del. Valley Citizens' Council for Clean Air*, 478 U.S. at 563. Second, the Court may, "within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *See Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Reed*, 179 F.3d at 471-72).

13

### *i. Reasonable hourly rate*

Plaintiff seeks rates of $425-per-hour for attorney Robert June and $250-per-hour for co-counsel Nicole Winston. (*See* Dkt. 28 at 18.) A reasonable hourly rate is generally calculated according to the "prevailing market rates in the relevant community." *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "relevant community" here is the Eastern District of Michigan. *See Adcock-Ladd*, 227 F.3d at 350 (relevant community is the legal community within the court's territorial jurisdiction). And the "'prevailing market rate' is that rate which lawyers of comparable skill and experience can expect to command" in the relevant community. *See id.* "The appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007).

Robert June is a sole practitioner in Ann Arbor with over twenty years' experience, and he has litigated ERISA cases for nearly that long. (*See* Dkt. 28-5 at 2-3.) According to the most recent survey from the State Bar of Michigan, sole practitioners working at an office outside of

14

the home charged rates of $250 at the 75th percentile and $383 at the 95th. *See* STATE BAR OF MICHIGAN, ECONOMICS OF LAW PRACTICE 6 (2014), http://www.michbar.org/file/pmrc/articles/0000151.pdf. Attorneys who practice in Ann Arbor charged hourly rates of $350 at the 75th percentile and $520 at the 95th. *See id.* at 5. Attorneys who practice plaintiffs'-side employment law charged hourly rates of $330 at the 75th percentile and $450 at the 95th. And attorneys with 16 to 25 years of practice charged hourly rates of $350 at the 75th percentile and $488 at the 95th. *See id.* The most relevant rate here is that of sole practitioners, in part because June bills for legal work that could not likely command the requested $425-per-hour from fee-paying clients.[1] The Court does not dispute that June is an experienced and well-qualified attorney, and will thus award plaintiff a rate of $385-per-hour for the work performed by June. That rate is in the top range for sole practitioners and at or above the 75th percentile for attorneys who have similar experience, practice in this field, and practice in Ann Arbor.

---

[1] For example, June bills for research such as "scope of arbitrary and capricious review" and "calculation of attorney fee rates and interest rates," as well as clerical work such as "prepar[ing] and fil[ing] appearance" and "[p]repar[ing] and fil[ing] Notice of Appeal," (see Dkt. 34-5), which is often the type of work that is assigned to associates or legal assistants and charged at much lower rates.

Nicole Winston practices law in a two-person firm in Port Huron, has over sixteen years' experience, and has litigated ERISA cases for most of her career.  (*See* Dkt. 28-6 at 2-3.)   In 2013, attorneys with approximately 16 years' experience charged a rate of $250-per-hour near the median.  *See* STATE BAR OF MICHIGAN, *supra*, at 5.  It was also the median rate for plaintiffs'-side employment attorneys.  *See id.* at 6. And it was the 75th percentile rate for attorneys who practice in St. Clair County, where her office is located.  *See id.* at 9.   Plaintiff's requested rate of $250-per-hour for the work performed by Winston is reasonable and thus awarded.  *See, e.g.*, *Potter*, 10 F. Supp. 3d at 747 (awarding rate of $250-per-hour for associates in ERISA case); *Fura v. Fed. Express Corp. Long Term Disability Plan*, No. 10-cv-13298, 2014 U.S. Dist. LEXIS 11313, at *7 (E.D. Mich. Jan. 30, 2014) (awarding rates of $200-per-hour for associates and $350-per-hour for partner in ERISA case).

### ii.  *Reasonable number of hours billed*

In his most recent filing, plaintiff seeks attorney fees for 220.2 hours of work for June and 34.5 hours of work for Winston.  (*See* Dkt. 34-5 at 6, 8.)   Defendant argues generally that the hours should be

reduced because the total number of hours is unreasonably excessive for "a straightforward" case, the billing records contain improper block billing and vague entries, and the time billed is duplicative and padded. (*See* Dkt. 31 at 19-23.)  Plaintiff's requested award is reduced as follows.

The time billed for administrative or otherwise non-compensable tasks is discounted.   Courts have not allowed attorney fees for administrative or non-legal tasks.  *See, e.g., Potter*, 10 F. Supp. 3d at 750 (reducing fees for "clerical tasks" such as "file organization," "proofread[ing] correspondence and filing," "[r]etriev[ing] documents from Wayne Library," and "[c]ontinu[ing] and complet[ing] file organization"); *Caudill v. Sears Transition Pay Plan*, No. 06-cv-12866, 2011 U.S. Dist. LEXIS 45294, at *44-45 (E.D. Mich. Apr. 26, 2011) (reducing hours for entries such as "organized file," "re-sorting questionnaires," "filing," "binders," and "organize meeting"); *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 941 (E.D. Mich. 2005) (no fees for "media and public relations efforts").  June's hours are thus reduced by

6.2 hours for a total of 214 hours, and Winston's hours are reduced by 1

hour for a total of 33.5 hours.[2]

Defendant makes much of the fact that plaintiff's counsel spent

more time on this case than defendant's counsel, arguing that "both

parties were essentially required to conduct about the same amount of

work and had the same thing at stake (the payment or non-payment of

---

[2] The Court discounts the following hours billed by June: 0.1 for "create file" on April 1, 2013; 0.1 for "process appearances of counsel" on July 24, 2013; 0.1 for "process answer to complaint" on September 17, 2013; 0.1 for "Process Notice of Scheduling Conference" on October 3, 2013; 0.1 for "process joint scheduling plan as filed" on October 29, 2013; 0.2 for "Process Scheduling Order filed by Court" on November 27, 2013; 0.1 for "Process notice of filing administrative record" on January 2, 2014; 25%, that is 1.5, for "Scan, sort, and initial review of 1100 page administrative record . . ." on January 11, 2014; 0.1 for "Process Notice of Determination of Motion Without Oral Argument" on March 26, 2014; 0.1 for "Process Notice of Reassignment" on May 13, 2014; 0.1 for "Process Notice of Determination of Motion Without Oral Argument" on May 24, 2014; 0.2 for "Process and review briefing letter from Sixth Circuit; process Certificate of Service" on September 23, 2014; 0.8 for "Create appeal file and forms; process Sixth Circuit notice of telephone mediation" on September 24, 2014; 0.1 for "Emails with Sixth Circuit Mediation Office and opposing counsel rescheduling mediation" on September 29, 2014; 0.1 for "Process email from Sixth Circuit mediator" on October 6, 2014; 0.1 for "Process appearances and corporate disclosures by opposing counsel" on October 7, 2014; 25% or 0.3 for "arrange conference room with land line" on October 20, 2014; 0.1 for "process ruling letter" on October 22, 2014; 0.1 for "process ruling letter" on December 19, 2014; 0.1 for "process ruling letter" on February 10, 2015; 0.1 for "Process withdrawal of appearance by opposing counsel" on March 2, 2015; 0.1 for "Process ruling letter" on March 3, 2015; 1.2 for "Process Notice of Oral Argument; file acknowledgment; make travel arrangements" on April 8, 2015; 0.1 for "Process District Court entry of Court of Appeals Judgment" on August 11, 2015; 0.1 for "process Sixth Circuit Mandate" on August 27, 2015; and 0.1 for "process appearance of counsel" on September 11, 2015.   (*See* Dkt. 34-5.)   The Court discounts 1.0 hours for Winston's entry on April 16, 2013, "Forwarded file documents and SPD regarding R. Shaw To Co-Counsel Robert June."   (*See* Dkt. 34-5 at 7.)

one claimant's benefits)."[3]  (*See* Dkt. 31 at 19.)  Defendant notes that up to the time of the motion for fees, defendant's counsel billed 144.8 hours on this case through appeal, and plaintiff's counsel billed a total of 244.4 hours.  (*See id.* at 20.)  "On this basis alone," argues defendant, "[p]laintiff's fee request should be substantially reduced."  (*See id.*)

But the disparity in time billed between the parties may be reasonable if sufficiently justified by the work articulated.  "The 'key requirement . . . is that [t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'"  *United States v. GE*, 397 F. App'x 144, 148-49 (6th Cir. 2010) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008)).

For the vast majority of June's entries, sufficient detail is provided such that the entries are not vague and the block billing is permissible. Although generally disfavored, block billing is not impermissible in the

---

[3] Each parties' relative "stake" is of little import to the analysis.  However, it is verging on disingenuous to suggest that AT&T Umbrella Benefit Plan No. 1 was as concerned about the outcome of this case as Raymond Shaw, as exhibited by defendant's characterization of the case as concerning "one claimant's benefits."

Sixth Circuit.  *See generally Potter*, 10 F. Supp. 3d at 763-64 (citing cases).  Rather than an across-the-board reduction, see for example *id.*, the Court specifically discounts those few entries that are impermissibly vague or should otherwise not be billed in full.[4]  June's hours are thus further reduced by 1.1 hours for a total of 212.9 hours.

Finally, plaintiff's fee request will not be reduced for "duplication or padding."[5]  (*See* Dkt 31 at 22-23.)  The different entries regarding the mediation are easily understood as preparing the client for the mediation, participating in the mediation, and debriefing the client on the mediation.  That is not duplicative or padded work.  And billing both attorneys' time spent reviewing the "approximately 1,000 pages of the claim record," (see *id.* at 22-23), is not unreasonable.  Both attorneys had to be familiar with the vast record, which reasonably had to be re-reviewed at various points given that the case was appealed.  A total of 13 hours reviewing the record for this Court's proceeding and

---

[4] The Court discounts the following hours billed by June for vagueness: 0.1 for "Email with opposing counsel" on September 28, 2014; 0.2 for "Finalize and file brief on appeal" on December 5, 2014; 0.1 for "Finalize and file reply brief" on February 9, 2015.  (*See* Dkt. 34-5.)  The Court also discounts 50%, that is 0.2, for "corrections to citations to the record" on December 9, 2014, and 50%, that is 0.5, for "Review of district court docket to correct citations of court record in brief on appeal" on December 13, 2014, (see *id.*), because those entries should not be billed in full at a rate of $385-per-hour.

[5] To the extent that some entries could be considered duplicative, they have already been discounted for vagueness.  *See supra* note 4.

then 3.9 hours re-reviewing the record for the proceeding on appeal is reasonable.

Thus a total of 212.9 hours at a rate of $385-per-hour, or $81,966.50, is awarded in attorney fees for the work performed by June. And a total of 33.5 hours at a rate of $250-per-hour, or $8375, is awarded in attorney fees for the work performed by Winston. The total award for attorney fees is $90,341.50.

## III.   Conclusion

For the reasons set forth above, plaintiff's motion for benefits, interest, costs, and attorney fees, (see Dkt. 28), is granted in part. Defendant shall pay plaintiff $35,412.72 in benefits, 6% pre-judgment interest, $855 in costs, and $90,341.50 in attorney fees.

IT IS SO ORDERED.


Dated: December 8, 2015               s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                      United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's

ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 8, 2015.


s/Felicia M. Moses
FELICIA M. MOSES
Case Manager